IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | CRIMINAL NO. 1:19-CR-316 |
| : | |
| **v.** : | (Judge Conner) |
| : | |
| **DARIAN DAVIS RAY**, : | |
| : | |
| **Defendant** : | |

## MEMORANDUM

Defendant Darian Davis-Ray[1] moves the court to suppress evidence recovered during a search of his residence and, later, a search of his car. For the following reasons, we will deny Davis-Ray's motion.

**I.    Factual Background**[2]

On August 13, 2018, Steelton Borough Police Detective Kevin Martin conducted a traffic stop of Davis-Ray's vehicle. (See Gov. Ex. 1 at 4). During the traffic stop, Detective Martin learned that Davis-Ray lived in Apartment #2 at 19 North 4th Street in Steelton, Pennsylvania. (Id.) Two days later, on August 15, 2018, Detective Martin opened a drug investigation into Davis-Ray. (Id.) That same

---

[1] The indictment refers to the defendant as both "Darian Davis Ray" and "Darian Davis-Ray." (See Doc. 1). Consistent with the defendant's filings in support of his suppression motion, we will refer to the defendant as "Darian Davis-Ray." (See generally Doc. 37-1).

[2] The following factual narrative derives from testimonial and documentary evidence adduced during the suppression hearing in this matter, together with several exhibits attached to the parties' briefing. Citations to hearing exhibits are abbreviated as "Gov. Ex." Citations to the September 1, 2020 suppression hearing transcript are abbreviated as "9/1/20 Tr. __."

day, at roughly 12:30 a.m., Detective Martin conducted a "trash pull" of two trash bags sitting in the alleyway outside Davis-Ray's residence. (Id.)

Martin recovered several items from the trash pull that he documented in a police report. The first bag officers searched contained no mail, so the bag was discarded. (See Doc. 37-1 at 34). The second bag, however, contained "pieces of suspected marijuana inside a corner of a cellophane bag," "several other loose marijuana stems and pieces through out (sic) the second bag," and "blunt guts inside a cup that is consistent with the use of marijuana." (Id.) Detective Martin also recovered two pieces of mail addressed to Davis-Ray at the North 4th Street address and a prescription bottle issued to Davis-Ray. (Id.) In addition, Detective Martin recovered, photographed, and preserved a hypodermic needle found during the trash pull. (See 9/1/20 Tr. 9:4-18).

On August 16, 2018, Detective Martin sought a warrant to search Davis-Ray's residence for "controlled substances, drug paraphernalia and other substances or materials." (Gov. Ex. 1 at 1). Detective Martin submitted an affidavit of probable cause with his search warrant application in which he outlined the facts that he believed established probable cause to search the residence. (Id. at 4-5). The affidavit begins with a description of Detective Martin's law enforcement experience, specifically that relating to drug investigations. (Id. at 4). It then describes the August 13, 2018 traffic stop and explains that Detective Martin

2

confirmed Davis-Ray's address during that stop. (Id.) Lastly, the affidavit sets forth the findings of the August 15, 2018 trash pull as follows:

1. loose pieces of marijuana
2. marijuana stems
3. pieces of marijuana in a cellophane bag corner
4. burnt marijuana roach cigarette
5. "blunt guts"
6. hypodermic needle
7. mail belong to Darian Wesley Davis-Ray, addressed to 19 North 4th Street apartment 2 in the borough of Steelton
8. empty prescription pill bottle issued to Darian Wesley Davis-Ray

(Id. at 4-5). Magisterial District Judge Kenneth A. Lenker issued the search warrant. (Id. at 1).

Officers conducted a daytime search of Davis-Ray's residence on August 17, 2018. (Id. at 6). During the search, officers recovered a substantial amount of marijuana, several firearms, six "stacks of cash" totaling roughly $19,000, and three cell phones. (See id. at 6; Gov. Ex. 2 at 2). A police K-9 also alerted to the smell of controlled substances on the driver side passenger door of Davis-Ray's car—a black 2012 Chrysler 300—parked outside the residence.[3] (See Gov. Ex. 2 at 2). Officers promptly sought another search warrant for Davis-Ray's car. (See id. at 1).

Attached to the application for a warrant to search Davis-Ray's car is an affidavit of probable cause filed by Officer Dory Thompson of the Steelton Borough Police Department. (Id. at 2-3). In his affidavit, Officer Thomson describes the

---

[3] The car was apparently registered to Katiria Maldonado-Davila. (See Doc. 29). However, Davis-Ray was in possession of the car's key at the time of the home search and was seen driving the car in the days prior. (Id.) Davis-Ray does not disclaim custody of the car for purposes of this motion. (See Doc. 37-1 at 2-3).

findings of the earlier home search and explains that the police K-9 alerted when outside Davis-Ray's car. (Id. at 2). Magisterial District Judge Michael J. Smith issued the search warrant. (Id. at 1). During an August 18, 2018 search of the car, officers recovered over $2,000 in cash, two phones, "loose marijuana shake," and mail. (Id. at 4).

At the suppression hearing, Detective Martin explained that detectives regularly use trash pulls as an investigative technique to look for evidence of drug use or trafficking. (9/1/20 Tr. 6:2-8). He testified that he has applied for search warrants based on trash-pull evidence at least 20 times over the course of nine years. (Id. at 6:9-15). According to Detective Martin, he has never been denied a search warrant based on trash-pull evidence. (Id. at 6:24-8:16). Detective Martin also testified that Judge Lenker expressed no hesitation or doubt as to his showing of probable cause. (Id. at 8:17-25). He went on to state that he did not mislead Judge Lenker in his affidavit, (id. at 9:1-3), and that, based on his experience, he believed he was lawfully authorized to search Davis-Ray's residence, (id. at 19:19-23). Counsel for Davis-Ray asked no questions of Detective Martin and called no witnesses. (Id. at 10:24-11:1).

The undersigned thereafter asked Detective Martin a series of questions regarding his investigation into Davis-Ray. The court asked Detective Martin to "[e]xplain . . . how you began a drug investigation into the residence" on August 15, 2018. (Id. at 11:15-16, 11:9-18). Detective Martin stated that his department had "prior contact" with Davis-Ray and that "we were basing our investigation off that prior contact." (Id. at 11:22-25; see also id. at 13:2-12). It is undisputed that

4

Detective Martin failed to describe this prior contact in his affidavit of probable cause. (Id. at 13:13-15).

## II. Procedural History

Davis-Ray was indicted on October 30, 2019. Count 1 charges him with possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1). Count 2 charges him with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Davis-Ray moves to suppress evidence obtained during the search of his residence and his car. The court held a suppression hearing on September 1, 2020, and the motion is now ripe for disposition.

## III. Discussion

Davis-Ray argues that we should suppress all evidence recovered during, and stemming from, a search of his home. He asserts that the search warrant authorizing the search of his residence was unsupported by probable cause. He also contends that the good-faith exception is inapplicable. Although we agree with Davis-Ray that the search warrant was not supported by probable cause, we conclude that the good-faith exception applies.

### A. Search Warrant Supported by Probable Cause

We must decide whether the evidence obtained from a single trash pull in this case, without more, supplied probable cause to support a search warrant. Davis-Ray argues that trash-pull evidence must be supported by corroborating evidence of unlawful activity. The government, citing to factually distinguishable

out-of-circuit case law, asks us to conclude that the evidence obtained during the trash pull establishes probable cause.

The Fourth Amendment requires searches and seizures to be reasonable, and all warrants to be supported by probable cause. See U.S. CONST. amend. IV. When it comes to searches of the home, the constitutional default is that a warrant is required. See Kentucky v. King, 563 U.S. 452, 459 (2011) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)). To issue a search warrant, the magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Stearn, 597 F.3d 540, 554 (3d Cir. 2010) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Our job is "not to decide probable cause *de novo*, but to determine whether 'the magistrate had a substantial basis for concluding that probable cause existed.'" Id. (quoting Gates, 462 U.S. at 238). In undertaking this review, we are limited "to the facts that were before the magistrate judge, *i.e.*, the affidavit, and [do] not consider information from other portions of the record." United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (citation and internal quotation marks omitted).

As the United States Supreme Court has explained, probable cause is an amorphous and "fluid" concept. See Ornelas v. United States, 517 U.S. 690, 695-96 (1996). It is "not readily, or even usefully, reduced to a neat set of legal rules." Id. (quoting Gates, 462 U.S. at 232). Whether probable cause exists is an objective determination based on the totality of the circumstances present at the time of the challenged governmental conduct. See United States v. Williams, 413 F.3d 347, 353

6

n.6 (3d Cir. 2005). Probable cause "is not a high bar." Kaley v. United States, 571 U.S. 320, 338 (2014).

Davis-Ray does not argue that trash pulls are an improper investigative technique or that this trash pull itself violated the Fourth Amendment. Rather, he argues that the *de minimis* evidence obtained from the trash pull alone is insufficient to establish probable cause. Because our court of appeals has not squarely addressed this question in a precedential opinion, we resort to persuasive precedent for guidance. That precedent makes clear that trash-pull evidence is more likely to provide the requisite probable cause when it is suggestive of ongoing or repeated unlawful activity, see United States v. Leonard, 884 F.3d 730, 734 (7th Cir. 2018); United States v. Abernathy, 843 F.3d 243, 254-55 (6th Cir. 2016); United States v. Briscoe, 317 F.3d 906, 907-08 (8th Cir. 2003); United States v. Harris, 118 F. App'x 592, 593-94 (3d Cir. 2004) (nonprecedential); United States v. Jackson, No. 18-217, 2019 WL 1116913, at *3 (W.D. Pa. Mar. 11, 2019), or is supported by evidence corroborating the target's participation in unlawful activity, Abernathy, 843 F.3d at 255 (citation omitted); United States v. Jenkins, 819 F. App'x 651, 661 (10th Cir. 2020) (nonprecedential); United States v. Miller, 134 F. App'x 531, 533 (3d Cir. 2005) (nonprecedential); Harris, 118 F. App'x at 593-94; Lockhard, 2013 WL 5225234, at *1, 5-6. Police must also link the target to both the trash recovered and the place to be searched.[4] See Leonard, 884 F.3d at 734; see also Jenkins, 819 F. App'x at 659-61;

---

[4] There is no dispute that officers recovered evidence linking Davis-Ray to the place to be searched.

Abernathy, 843 F.3d at 254-55; Miller, 134 F. App'x at 533; Harris, 118 F. App'x at 593; Briscoe, 317 F.3d at 907; Jackson, 2019 WL 1116913, at *1-3.

The most analogous application of this sliding scale is the Sixth Circuit's decision in United States v. Abernathy, 843 F.3d 243 (6th Cir. 2016). In Abernathy, police seized from the defendant's trash "several" marijuana roaches and marijuana-laced plastic bags. See id. at 246. The court held that the limited evidence recovered from the trash pull, by itself, did not create a fair probability that drugs would be found in defendant's home. Id. at 254. Its reasoning was twofold. First, without additional evidence of drug activity, there was no reliable nexus linking the drug residue and paraphernalia to the defendant's house. Id. at 254-55. Second, the small quantity of drug paraphernalia was, on its own, insufficient to establish a fair probability that more drugs were in the home. See id. at 255. The court explained that its decision may have been different if police presented evidence of the defendant's prior involvement in drug activity or recovered a substantial amount of drug refuse in the defendant's trash suggestive of "repeated and ongoing drug activity in the residence." Id. (citations omitted).

The government acknowledges that the case *sub judice* is similar to Abernathy. (See Doc. 47 at 5). It nonetheless states that there is a circuit split at play and urges us to side with the Seventh and Eighth Circuits, both of which have held that certain trash-pull evidence supported a probable cause finding. (Doc. 47 at 5-7 (citing Briscoe, 317 F.3d 906; Leonard, 884 F.3d 730)). Careful review of these decisions reveals that there is no circuit split: Briscoe and Leonard indeed reached different results, but they did so on starkly different *facts*, not different *law*. Briscoe

8

involved large quantities of marijuana seeds and stems, indicative of ongoing marijuana consumption or trafficking on the premises. Briscoe, 317 F.3 at 908. Leonard involved two trash pulls conducted one week apart, each containing "indicia of residency" and "testing positive for cannabis," likewise suggestive of "repeated and ongoing drug activity in the residence." Leonard, 884 F.3d at 734-35. Both courts held that the issuing judge had a substantial basis to conclude probable cause existed under the circumstances. Briscoe, 317 F.3 at 908; Leonard, 884 F.3d at 734-35. Thus, these cases are factually reconcilable with Abernathy.[5]

Persuasive authority within our circuit is also in accord with the analysis employed in Abernathy, Briscoe, and Leonard. In United States v. Harris, 118 F. App'x 592 (3d Cir. 2004) (nonprecedential), two trash pulls conducted roughly two weeks apart—both of which revealed drug-related evidence and indicia of residency—together with corroborating evidence of criminal activity, established a substantial basis that probable cause existed. See Harris, 118 F. App'x at 593-94. Six months later, in United States v. Miller, 134 F. App'x 531 (3d Cir. 2005) (nonprecedential), the court validated a magistrate's issuance of a search warrant based on complaints from neighbors of suspected drug activity, the defendant's

---

[5] The Fourth and Tenth Circuits have also recognized that a search warrant application reliant on trash-pull findings must contain additional evidence corroborating the target's unlawful conduct. The Fourth Circuit in United States v. Lyles, 910 F.3d 787 (4th Cir. 2018), held that "a trash pull revealing evidence of three marijuana stems, three empty packs of rolling papers, and a piece of mail, standing alone," did not establish probable cause. Lyles, 910 F.3d at 793, 794. More recently, the Tenth Circuit held in United States v. Jenkins, 819 F. App'x 651 (10th Cir. 2020) (nonprecedential), that trash-pull evidence (including drug paraphernalia and indicia of residency) coupled with indicators of the defendant's involvement in other drug crimes established probable cause. See Jenkins, 819 F. App'x at 659-61.

9

previous drug-related arrests, and trash-pull evidence containing indicia of residency and evidence of controlled substances.  See Miller, 134 F. App'x at 533-34.  District courts have also sanctioned search warrants in analogous circumstances.  See, e.g., Jackson, 2019 WL 1116913, at *1-3 (three trash pulls revealing drug-related evidence); Lockhart v. City of Easton, No. 12-0133, 2013 WL 5225234, at *4-6 (E.D. Pa. Sept. 17, 2013) (trash-pull evidence, indicia of residency, corroborating indicators of target's illicit conduct), aff'd, 588 F. App'x 144 (3d Cir. 2014) (nonprecedential); Gulley v. Haymaker, No. 06-131J, 2009 WL 763549, at *7-8 (W.D. Pa. Mar. 23, 2009) (two trash pulls revealing drug paraphernalia, indicia of residency, and ongoing drug investigation into defendant).

      Against this backdrop, we agree with Davis-Ray that the issuing judge lacked a substantial basis to conclude that probable cause existed to search Davis-Ray's home.  Detective Martin's affidavit describes evidence obtained from a single trash pull.  During that trash pull, officers recovered indicia of residency—mail addressed to Davis-Ray—but scant evidence of drug use or possession.  (See Gov. Ex. 1 at 4-5).  The officers in this case seized inconsiderable evidence of marijuana in Davis-Ray's trash, nothing suggestive of repeated or ongoing drug-related activity like that in Briscoe.  Furthermore, there is no evidence from which we can confidently conclude that the drug paraphernalia found in Davis-Ray's trash was in fact his, came from his home, or was in his home recently.  Without more evidence, there is no reliable basis to believe that more drugs were in his residence.  In other words, the connection between the substances found in the trash and the place to be searched is simply too attenuated.

Moreover, officers did not support their trash-pull findings with evidence corroborating Davis-Ray's alleged involvement in the drug trade. Although Detective Martin testified at the suppression hearing that his department had a prior run-in with Davis-Ray that ostensibly fueled suspicions of drug trafficking, he did not mention prior dealings in his affidavit of probable cause. (See 9/1/2020 Tr. 11:22-25, 13:2-15). The omission of this "critical" information is fatal to the government's theory, as it leaves us with no credible basis on which to conclude that evidence of unlawful drug activity may be in the residence. See Abernathy, 843 F.3d at 255. We therefore hold that this affidavit, supported exclusively by evidence obtained from a lone trash pull, did not provide the issuing judge with a substantial basis to conclude that there was probable cause to search the home.

**B.     "Good Faith" Exception**

That the warrant was invalid does not mean evidence obtained pursuant to it is inadmissible. Under the good-faith exception, we will not suppress "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." United States v. Leon, 468 U.S. 897, 922 (1984). The exclusionary rule does not apply where officers hold the "objectively reasonable belief that their conduct d[oes] not violate the Fourth Amendment." Stearn, 597 F.3d at 560 (quoting Leon, 468 U.S. at 918). Our court of appeals has recognized a few "rare" exceptions to this rule, only two of which are relevant here. Evidence will be suppressed if "the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit" or "the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely

11

unreasonable." United States v. Pavulak, 700 F.3d 651, 664 (3d Cir. 2012) (quoting Stearn, 597 F.3d at 561 n.19 (internal quotation marks and citations omitted)).

Davis-Ray suggests in passing that Detective Martin deliberately or recklessly provided Judge Lenker with a false affidavit. (See Doc. 37-1 at 8, 10). He asserts that discrepancies between the probable cause affidavit (which stated that police found a hypodermic needle in the trash pull) and the police report (which did not mention a hypodermic needle) demonstrate Detective Martin's dishonesty. (See id. at 10). A defendant challenging the veracity of facts submitted in support of a search warrant application may be entitled to challenge those facts in what is known as a Franks hearing. See Pavulak, 700 F.3d at 665 (citing Franks v. Delaware, 438 U.S. 154, 164-65 (1978)). But Davis-Ray has not requested a Franks hearing and he has made no attempt to develop facts proving that Detective Martin lied to Judge Lenker. We note that Davis-Ray's counsel did not cross-examine Detective Martin at the suppression hearing, thereby suggesting abandonment of this argument. Nonetheless, Detective Martin testified that he did in fact recover a hypodermic needle during the trash pull, that it was photographed, and that it was retained as evidence. (See 9/1/2020 Tr. 9:4-18). We find Detective Martin's testimony to be credible, and there is simply no basis on which to find that he provided false information in his affidavit.

Davis-Ray argues that Martin's reliance on the search warrant was unreasonable because it is woefully lacking in indicia of probable cause. (See Doc. 37-1 at 8, 11-13). In evaluating this argument, we are mindful that, ordinarily, the issuance of a search warrant essentially proves that the officer acted in good faith.

12

Hodge, 246 F.3d at 308 (citing Leon, 468 U.S. at 922; Williams, 3 F.3d at 74). Despite this presumption, "the good[-]faith exception requires a sincerely held and objectively reasonable belief that the warrant is based on a valid application of the law to all known facts." Stearn, 597 F.3d at 561-62 (quoting United States v. Zimmerman, 277 F.3d 426, 438 (3d Cir. 2002)).

We cannot say that Detective Martin's reliance on the warrant was unreasonable. The affidavit described Detective Martin's training and experience in law enforcement, the open drug investigation into Davis-Ray and his residence, and the drug contraband found in Davis-Ray's trash. (See Gov. Ex. 1 at 4). It also linked that trash to Davis-Ray and Davis-Ray to the house to be searched. (Id. at 4-5). Equipped with this information, a neutral and detached magisterial district judge issued the search warrant. Under these circumstances, a reasonable officer could have believed that the warrant and subsequent search were lawful.

This is especially true given the paucity of binding precedent concerning trash pulls. Officers acting in good faith must have "a reasonable knowledge of what the law prohibits." Stearn, 597 F.3d at 561-62 (quoting United States v. Zimmerman, 277 F.3d 426, 438 (3d Cir. 2002)). But the limited case law from our court of appeals offers only guideposts as to the sufficiency of probable cause affidavits based on trash-pull evidence. Therefore, even an exceptionally well-informed officer could have reasonably believed that the affidavit was legally sufficient. In light of this jurisprudential morass, we find that Detective Martin credibly and reasonably believed that he had probable cause and a valid warrant to search Davis-Ray's home. See Hodge, 246 F.3d at 309 (justifying officer's reliance

13

on warrant given the "unsettled jurisprudence governing cases of this type"); see also Pavulak, 700 F.3d at 664 (justifying officer's reliance given unsettled law in circuit at the time of affidavit's filing and competing out-of-circuit views).[6]

We conclude, based upon the evidence adduced at the hearing and a careful assessment of Detective Martin's credibility, that Detective Martin held a sincere and objectively reasonable belief that the search warrant for Davis-Ray's home was supported by probable cause.  Hence, we will not exclude evidence obtained during the ensuing home search.  As a result, we need not consider whether evidence obtained after the home search is inadmissible as fruit of the poisonous tree.

## IV.  Conclusion

We will deny Davis-Ray's motion (Doc. 37) to suppress.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    November 6, 2020

---

[6] Davis-Ray alternatively suggests that the good-faith exception is inapplicable because Detective Martin was both the affiant and one of the warrant's executing officers. (Doc. 37-1 at 12).  Our court of appeals has recognized that it may be problematic for the government to claim good faith when the affidavit was based on a "paltry showing" of probable cause and the affiant is also one of the executing officers.  See United States v. Zimmerman, 277 F.3d 426, 438 (3d Cir. 2002).  That said, the court of appeals has also recognized that the good-faith exception is not *per se* inapplicable where relevant officer is both the affiant and an executing officer.  See Pavulak, 700 F.3d at 665.  In any event, the affidavit in this case is supported by enough evidence to render Detective Martin's reliance reasonable.  Assuming *arguendo* that the affidavit presents a close call, it was objectively reasonable for Detective Martin to rely on the warrant once the issuing judge approved of it.  Stearn, 597 F.3d at 567 (quoting Hodge, 246 F.3d at 309).

14